In the Matter of the Application of JAMES McBRIEN, Petitioner, against CAROLA EDITH McBRIEN, Individually and as General Guardian of JAMES McBRIEN, and Others, Respondents.

Surrogate's Court, Richmond County, March 26, 1934.

*Henry Klauber*, for the petitioner.

*Edward F. Keegan*, for the Superintendent of Insurance.

Smith, S. Edith McBrien, also known as Carola Edith McBrien, was appointed general guardian of her two children, James McBrien and William Henry McBrien, on November 15, 1927, and at the time of the appointment gave a bond to each of said wards in the sum of $1,500 with the National Surety Company as surety.

Upon the application of the guardian on July 19, 1928, an order was made in this court by a prior surrogate, authorizing the general guardian to invest $4,500 of the funds of the wards on bond and mortgage on No. 90 Taft avenue, New Brighton.

On November 1, 1929, upon the petition of the guardian, but without notice to the wards, said surrogate made an order in Surrogate's Court, discharging the National Surety Company from its obligations on said bonds, and directed that the "*funds now remaining in the hands of the petitioner* [guardian] be placed on deposit in the American Trust Company to be there held in trust jointly with the Clerk of the Surrogate's Court." (Italics and word "guardian" mine.)

Said James McBrien became of age on May 27, 1932, and on October 19, 1933, brought this proceeding alleging that the said orders of the Surrogate's Court were made without authority of law and were invalid and void and requesting that said orders be vacated and that the guardian be directed to account.

The Superintendent of Insurance, as rehabilitator of the National Surety Company, appeared by attorney and contested the authority of the Surrogate's Court to vacate said orders or to direct the guardian to account, claiming that the Surrogate's Court had the power and authority to direct the investment of the ward's money on bond and mortgage, had authority to direct the cancellation of the guardian's bonds under section 180 of the Surrogate's Court Act, and that the petitioner had ratified the acts of the said guardian by reason of the fact that he had failed to make application for relief for eighteen months after he became of age.

Unquestionably the said guardian having given a bond had complete authority under section 85 of the Domestic Relations Law to make investments of the kind authorized by section 111 of the Decedent Estate Law, and an investment upon bond and mortgage upon improved real property of a value of fifty per cent greater than the amount loaned is authorized by said section. The guardian could make such an investment without authority of the Surrogate's Court and the order of this court made on July 19, 1928, directing such an investment upon the petition of said guardian was unnecessary, irregular and of no effect, and did not relieve the guardian nor the surety upon her bond of liability to the petitioner for any loss, if said investment had been negligently made in a security upon

property of less value than that authorized by section 111 of the Decedent Estate Law.

Application could have been made for the authority of the court to make such investment under rule 292 of the Rules of Civil Practice, pursuant to section 316 of the Surrogate's Court Act and upon compliance with the requirements of said rule an order in relation to the investment, and varying the security, could have been made. But, while it may be claimed that the authority of the court to make the investment was based upon said rule, yet as there was but little compliance with the requirements of said rule in said order, I find that no valid authority was granted by said order to make an investment which would relieve the guardian of the responsibility therefor.

Letters of guardianship can be either general or limited. If general, a bond is required (Surr. Ct. Act, § 180, 1st paragraph; § 271) which cannot be canceled or reduced during the minority of the ward without the authority of a decree based upon notice to the ward.

If limited (Surr. Ct. Act, § 89, and § 180, 2d paragraph), a bond may be dispensed with wholly or partly in the discretion of the surrogate upon the deposit of the ward's money or other property so far as the same are conveniently capable of deposit with a bank, savings bank, trust company or safe deposit company, subject to the order of the surrogate.

In either case, the ward's property is protected either by a bond or placing it out of the control of the guardian. In the present instance, a bond was given and general letters issued, and thereafter without application for an accounting and the revocation of the general letters and the issuance of limited letters, and without obtaining jurisdiction of the wards, as required by section 41 of the Surrogate's Court Act, an order was made directing the cancellation of the bond of guardian upon placing the remaining funds of the ward on deposit in the American Trust Company. No direction was made as to the control or deposit of the bond and mortgage and the order left the investment in the control of the guardian without security of any kind.

If, instead of a cancellation of the bond, there had been a reduction pursuant to section 111 of the Surrogate's Court Act, notice would have been required to have been given and a new bond with new sureties filed *before the original bond could have been discharged as to liability for matters subsequent to the filing of the new bond,* and to discharge the liability completely a judicial accounting and a decree thereon would have been required. Therefore, as it is necessary in order to procure the discharge of a guardian's bond *from any*

*future liability* that notice be given and a new bond filed, and to discharge such bond of past liability an accounting be had, it naturally follows that a guardian's bond cannot be entirely discharged of liability without an accounting and a decree thereon.

Said order would have been an unwarranted exercise of the discretion conferred upon the surrogate, if the court had obtained jurisdiction of the wards, but as jurisdiction was not obtained: " The want of jurisdiction makes the order and judgment of the court, and the record of its action utterly void and unavailable for any purpose and the want of jurisdiction may always be set up collaterally or otherwise." (*Kamp* v. *Kamp*, 59 N. Y. 212, 216.)

There can be no dispute that the petitioner, James McBrien, is entitled to have the person who acted as his general guardian account for her acts in such capacity, and as the bond is still in force and effect, it does not lie within the province of the Superintendent of Insurance, as rehabilitator, to dispute such request, unless the ward has released the guardian or the surety or the Statute of Limitations has run against him (*Douglass* v. *Ferris*, 138 N. Y. 192), where it was stated (at p. 206), " But so long as the ward does not make a binding agreement for the extension of time, and does not preclude himself in any way from instituting the proper proceeding against the guardian, mere delay will not affect the obligation of the sureties on the bond, providing the right to proceed is not barred by the Statute of Limitations. If he institutes the proper proceeding within the time allowed by law, neither the guardian nor his sureties can defeat it by alleging that he has waited too long. In this case, had no fraud been perpetrated upon the ward, he could have waited and left the property in the hands of his guardian without relieving him or his sureties.

" *The law did not require him to proceed within any particular period of time, except that designated in the Statute of Limitations.* Mere indulgence by the plaintiff of the guardian, without any valid agreement for delay or the extension of time does not affect the obligation of the surety." (Italics mine.)

As the bond was a sealed instrument, the petitioner still has abundance of time before the Statute of Limitations becomes a bar, and as it appears that the guardian still has property of the petitioner in her hands, *Matter of Camp* (126 N. Y. 377), which held, although sixteen years had elapsed since the ward had become of age, that the guardian was liable to account as long as he had property of the late ward in his hands unaccounted for, is also applicable.

The order of this court of July 18, 1928, authorizing the general guardian to make an investment on bond and mortgage is found to

be irregular and of no effect, and the order of November 1, 1929, canceling the bond of the said guardian is found to be a nullity for want of jurisdiction, and both such orders are vacated and set aside and the said guardian is directed to make and file her account in this court within ten days after the entry of the order herein. Enter order accordingly.